CROSNER LEGAL, P.C.
Craig W. Straub (SBN 249032)
*craig@crosnerlegal.com*
Kurt D. Kessler (SBN 327334)
*kurt@crosnerlegal.com*
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| NITAYA MCGEE and AISHA RAMSARAN, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HELLO BELLO CONSUMER WELLNESS, LLC,<br><br>Defendant. | Case No. 5:25-cv-00467-FLA-DTB<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Action Filed: December 5, 2024<br>Action Removed: February 20, 2025<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Nitaya McGee and Aisha Ramsaran ("Plaintiffs") individually, and on behalf of all others similarly situated, and the general public, by and through undersigned counsel, bring this action against Hello Bello Consumer Wellness, LLC ("Defendant"), and upon information and belief and investigation of counsel, allege as follows:

## PREFACE

1. This is a consumer class action for violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), and for breach of express warranty.

2. Defendant manufactures, distributes, advertises, markets, and sells Hello Bello Premium Baby and Kids Shampoo & Body Wash in various scents; the packaging on all Products prominently displays front and center on the label that the Products are "**Hypoallergenic**" (the "Products").

3. The "hypoallergenic" labeling statement is not true. The Products contain the known allergens Coco Glucoside, Lauryl Glucoside, and Cocamidopropyl Betaine.

4. In fact, these ingredients have been declared to be an "Allergen of the Year" by the American Contact Dermatitis Society.[1]

[1] Michelle Militello, Sophia Hu, Melissa Laughter, Cory A. Dunnick, American Contact Dermatitis Society Allergens of the Year 2000 to 2020, Dermatologic Clinics, Volume 38, Issue 3, 2020, Pages 309-320, ISSN 0733-8635, ISBN 9780323712132, https://doi.org/10.1016/j.det.2020.02.011.

5. In 2017, Alkyl Glucosides were declared to be the "Allergen of 2017."[2] Coco-Glucoside and Lauryl Glucoside are Alkyl Glucosides.[3]

6. In 2004, the American Contact Dermatitis Society designated Cocamidopropyl Betaine (CAPB) as the "Allergen of the Year."[4]

7. To make matters worse, Defendant specifically labels the Products for babies and kids who are experience allergic reactions at much higher incidence than adults.

8. Defendant's packaging, labeling, and advertising scheme is intended to give and does give consumers the impression that they are buying a premium product that is hypoallergenic and does not contain ingredients declared to be allergens by experts in the filed like the American Contact Dermatitis Society.

9. Defendant uses the "Hypoallergenic" branding strategy and labeling claims as the primary feature differentiating the Products from other shampoo and body wash products in the marketplace.

10. Plaintiffs were deceived by Defendant's unlawful conduct and brings this action individually and on behalf of consumers to remedy Defendant's unlawful acts.

---

[2] *Id.*; *see also* Cohen DE. What is the 2017 Allergen of the Year? The Dermatologist. Available at: https://www.the-dermatologist.com/content/what-2017-allergen-year. Published January 23, 2017.

[3] Cohen DE. What is the 2017 Allergen of the Year? The Dermatologist. Available at: https://www.the-dermatologist.com/content/what-2017-allergen-year. Published January 23, 2017.

[4] Rush Ak et al. Eliminating cocamidopropyl betaine–induced allergic contact dermatitis: A new benign-by-design zwitterionic surfactant Journal of the American Academy of Dermatology, Volume 79, Issue 3, AB127.

## JURISDICTION AND VENUE

11. Defendant removed this action stating that this Court has jurisdiction has jurisdiction over Plaintiffs' claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). ECF No. 1.

12. This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California, and supplies goods within the State of California.

13. The Court also has specific jurisdiction over Defendant as it has purposefully directed activities towards the forum state, Plaintiffs' claims arise out of those activities, and it is reasonable for Defendant to defend this lawsuit because it has sold deceptively advertised Products to Plaintiffs and members of the Class in California.

14. Venue is proper because Plaintiff McGee lives in Riverside County and bought the Product at issue in Riverside County, and the original complaint was removed from Riverside County Superior Court.

15. Intra-divisional venue is proper because Plaintiff McGee lives in Riverside County and bought the Product at issue in Riverside County, and the original complaint was removed from Riverside County Superior Court.

## PARTIES

16. Defendant Hello Bello Consumer Wellness, LLC maintains its principal place of business in Pacific Palisades, California and is a citizen of this state.[5] Defendant is the manufacturer, distributor, marketer, and seller of the Products. Defendant claims it is the seller of "Premium, plant-based baby products for all. Goodbye bad stuff."[6]

---

[5] https://www.linkedin.com/company/hellobello/

[6] https://www.linkedin.com/company/hellobello/

17. Plaintiff McGee purchased the Hello Bello Baby Shampoo & Wash Product in the fragrance-free scent which was labeled as “hypoallergenic” approximately five times from approximately August 2023 to December 2024 at Walmart retail stores near her home in Riverside County, California. She bought the Product for her child and used the Product to wash her child. When purchasing the Products, Plaintiff McGee didn’t expect that the “hypoallergenic” statement on the label was false. Plaintiff McGee did not expect Defendant to publicly place deceptive statements about the contents of its Product on the label of the Product. Plaintiff McGee paid approximately $8-$10 for each Product she purchased.

18. Plaintiff Ramsaran purchased the Hello Bello Baby Shampoo & Wash Product which was labeled as “hypoallergenic” in the past two-to-three years for her child while in Brooklyn, New York. She bought the Product for her child and used the Product to wash her child. When purchasing the Product, Plaintiff Ramsaran didn’t expect that the “hypoallergenic” statement on the label was false. Plaintiff Ramsaran did not expect Defendant to publicly place deceptive statements about the contents of its Product on the label of the Product. Plaintiff Ramsaran paid approximately $8-$10 for the Product she purchased.

19. Plaintiffs saw and relied on the “hypoallergenic” claims on the labels of the Products. Plaintiffs would not have purchased the Products, had they known that the Products contained known common allergens and thus was not “hypoallergenic” as the label claims. As a result, Plaintiffs suffered injury in fact when they spent money to purchase the Products they would not have purchased absent Defendant’s false and misleading advertising.

20. Plaintiffs continue to see the Product for sale and desire to purchase them if they were not deceptively advertised. However, as a result of Defendants’ ongoing misrepresentations, Plaintiffs are unable to rely on the Products’ labeling when deciding in the future whether to purchase the Products and are imminent risk of future financial injury.

## THE "HYPOALLERGENIC" PRODUCTS

21. The "Baby" Products come in the following scents: soft lavender, fragrance free, gentle sweet cream, sweet sleep, and honeysuckle. The "Kids" Products come in the following scents: watermelon and coconut.

22. The Products all contain the same "hypoallergenic" claim as well as at least one of the known allergen ingredients Coco Glucoside, Lauryl Glucoside, and Cocamidopropyl Betaine.

23. The front label of the Products prominently states that it is "hypoallergenic" which is misleading to reasonable consumers because the Product contains a known allergen. Below are exemplars of the front label for the Products (red boxes added):




24. The back of the label further reinforces the front-label "hypoallergenic" claim by stating "**Extra Gentle Cleaning for Extra Sensitive Babies**" or "**Extra Cleaning for Extra Dirty Kiddos**." Exemplars of the back of the labels of the Products are shown below:


Extra Gentle Cleaning for Extra Sensitive Babies.
Clean your kiddo from head-to-toe with our two-in-one formula that soothes with Aloe Vera and Calendula while moisturizing with Jojoba and Sunflower Seed Oil. Designed for delicate skin.
Suds up: Get your wee one wet and wash from top to toe. Rinse and revel in the glow of your squeaky clean cutie!
Premium Parenthood for All - Our mission is to create a community of parents that celebrates and supports ALL parts of parenthood, and to provide that community with affordable premium products to help make parenthood better and easier for ALL families.
Extra Gentle Cleaning for Extra Dirty Kiddos.
Mud, muck, and messes from major to minor — almost anything your kids get into, we can get it off.
Great for all hair types and sensitive skin, our two-in-one formula includes Jojoba, Avocado, and Aloe Vera to soothe, soften and moisturize.
Extra Gentle Cleaning for Extra Dirty Kiddos.
Mud, muck, and messes from major to minor — almost anything your kids get into, we can get it off.
Great for all hair types and sensitive skin, our two-in-one formula includes Jojoba, Avocado, and Aloe Vera to soothe, soften and moisturize.

## THE "HYPOALLERGENIC" PRODUCTS CONTAIN KNOWN ALLERGENS

25. Allergic contact dermatitis (ACD) is a widespread skin condition affecting more than 14 million Americans each year. Any body part that comes into contact with the allergen may develop an inflammatory reaction.[7]

26. Merriam-Webster defines "hypoallergenic" as "having little likelihood of causing an allergic response."[8] Similarly, Dictionary.com defines "hypoallergenic" as "designed to reduce or minimize the possibility of an allergic response, as by containing relatively few or no potentially irritating substances."[9]

27. Thus, reasonable consumers expect that hypoallergenic products act as they are labeled—in that they have little likelihood of causing an allergic response or are designed to minimize the possibility of an allergic response.

28. Despite being labeled hypoallergenic, the Products contain the known allergens **Coco Glucoside, Lauryl Glucoside**, and/or **Cocamidopropyl Betaine**. These allergen ingredients are present in the Products in significant amounts as each are listed in the top four ingredients in the Products.

29. The Allergen of the Year is an annual award approved by the American Contact Dermatitis Society to draw attention to common agents causing significant ACD.[10] The allergen of the year awards have also been reaffirmed, after comprehensive review of the literature of each ingredient was conducted on

---

[7] Michelle Militello, Sophia Hu, Melissa Laughter, Cory A. Dunnick, American Contact Dermatitis Society Allergens of the Year 2000 to 2020, Dermatologic Clinics, Volume 38, Issue 3, 2020, Pages 309-320, ISSN 0733-8635, ISBN 9780323712132, https://doi.org/10.1016/j.det.2020.02.011.

[8] See https://www.merriam-webster.com/dictionary/hypoallergenic (last visited August 14, 2024).

[9] See https://www.dictionary.com/browse/hypoallergenic (last visited August 14, 2024).

[10] Michelle Militello, Sophia Hu, Melissa Laughter, Cory A. Dunnick, American Contact Dermatitis Society Allergens of the Year 2000 to 2020, Dermatologic Clinics, Volume 38, Issue 3, 2020, Pages 309-320, ISSN 0733-8635, ISBN 9780323712132.

PubMed (US National Library of Medicine), to further inform the scientific community of the importance of informing patients of allergen avoidance.[11]

**Coco Glucoside and Lauryl Glucoside**

30. In 2017, the "***Contact Allergen of the Year,***" as awarded by the American Contact Dermatitis Society, was alkyl glucoside. Coco Glucoside and Lauryl Glucoside are alkyl glucosides.

31. Alkyl glucosides are nonionic surfactants formed through the condensation of glucose with a fatty alcohol. These fatty alcohols are primarily derived from palm, coconut, and rapeseed oil. Alkyl glucosides are found in both rinse-off products (shampoos and body washes) and leave-on cosmetics (sunscreens, fragrances, moisturizers, and deodorants).[12] Since the rate of positive patch test reactions has dramatically increased with increased use of alkyl glucosides and specifically Coco glucoside and Lauryl Glucoside the American Contact Dermatitis Society named them as Allergens of the Year in 2017.[13]

32. A 2014 study revealed that allergic contact dermatitis in cosmetics is caused by alkyl glucosides and in view of their common usage, "identification as allergenic culprits is important." [14]

33. Lauryl glucoside contact dermatitis affects a significant portion of the patch-tested population.[15]

---

[11] *Id.*

[12] Emily Boozalis, BA, and Shivani Patel, MD, Allergen of the Year alkyl glucoside is an ingredient in top-selling sunscreens and facial moisturizers, J. Am. ACAD Dermotl, 2018, Vol. 78, No. 4

[13] *Id.*

[14] Dorien Gijbels, An Timmermans, Pedro Serrano, Evelyne Verreycken, An Goossens, Allergic contact dermatitis caused by alykl glucosides (2014), available at https://pubmed.ncbi.nlm.nih.gov/24588370/

[15] Contact allergy to lauryl glucoside, available at https://dermnetnz.org/topics/contact-allergy-to-lauryl-glucoside

34. Studies have specifically noted the problematic nature involving the inclusion of lauryl and coco glucoside in products marketed as hypoallergenic. [16]

**Cocamidopropyl Betaine**

35. Cocamidopropyl Betaine is an amphoteric synthetic detergent.[17] While used in the Products, it is also used in "household cleaners and laundry detergent."[18] The ingredient was awarded the "Allergen of the Year" in 2004.[19] Cocamidopropyl betaine allergy typically presents as eyelid, facial, scalp, and/or neck dermatitis.[20] This pattern is explained by frequent exposure to personal cleansing products and/or the enhanced proclivity of these areas to develop allergic contact dermatitis.[21] The prevalence of contact sensitization to cocamidopropyl betaine continues to increase, and, for that reason, it was designated the American Contact Dermatitis Society Allergen of the Year for 2004.[22]

36. Since Cocamidopropyl betaine (CAPB) is a known allergen, Defendant's competitors avoid the use of the ingredient. For example, Johnson & Johnson investigated a similar but non-allergenic ingredient called

---

[16] Olaf Rodriguez, Bruce A. Brod, William D. James Impact of trends in new and emerging contact allergens (March 25, 2022), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9112390/

[17] Michelle Militello, Sophia Hu, Melissa Laughter, Cory A. Dunnick, American Contact Dermatitis Society Allergens of the Year 2000 to 2020, Dermatologic Clinics, Volume 38, Issue 3, 2020, Pages 309-320, ISSN 0733-8635, ISBN 9780323712132, https://doi.org/10.1016/j.det.2020.02.011.

[18] Medical News Today, Cocamidopropyl betaine: Uses and safety (Mar. 31, 2022) available at https://www.medicalnewstoday.com/articles/humectant#summary

[19] Michelle Militello, Sophia Hu, Melissa Laughter, Cory A. Dunnick, American Contact Dermatitis Society Allergens of the Year 2000 to 2020, Dermatologic Clinics, Volume 38, Issue 3, 2020, Pages 309-320, ISSN 0733-8635, ISBN 9780323712132, https://doi.org/10.1016/j.det.2020.02.011.

[20] *Id.*

[21] *Id.* (citing published research).

[22] *Id.*

Cocobutyramido hydroxysultaine (CBAHS).[23] Research Published in the Journal of the American Academy of Dermatology found that CBAHS found that it "did not induce a single" allergic reaction.[24] The research concluded that "CBAHS is a desirable alternative to CAPB for use in personal care products to avoid the allergens intrinsic to CAPB and thus avert ACD potential."[25]

37. According to published research by *The Dermatologist*, most cases of allergic reactions from Cocamidopropyl betaine are caused by Cocamidopropyl betaine-based shampoos, soaps, and body washes.[26] The publication notes that clinical research hass found that CAPB was found to be on of "the top 3 leading allergens" in the study.[27]

38. The Environmental Working Group (EWG), a known expert organization in dermatology and consumer products, states that "Cocamidopropyl betaine is a synthetic surfactant; it has been associated with irritation and allergic contact dermatitis, reactions that could be due to the ingredient itself or to impurities present in it, such as 3-dimethylaminopropylamine."[28]

39. Published research in the *Journal of the American Academy of Dermatology* noted that CAPB is the "allergen with the eighth most frequent

---

[23] Eliminating cocamidopropyl betaine–induced allergic contact dermatitis: A new benign-by-design zwitterionic surfactant. Journal of the American Academy of Dermatology, Volume 79, Issue 3, AB127.

[24] *Id.*

[25] *Id.*

[26] *See* Jacob, *Review ACDS' Allergen of the Year 2000-2015*, The Dermatologist (Nov. 2014) available at https://www.hmpgloballearningnetwork.com/site/thederm/site/cathlab/event/review-acds-allergen-od-year-2000-2015

[27] *Id.* (citing published clinical research)

[28] Environmental Working Group, EWG's Skin Deep, Cocamidopropyl Betaine available at https://www.ewg.org/skindeep/ingredients/701520-cocamidopropyl_betaine-COCAMIDOPROPYL_BETAINE/

reactions in a recent 10-year retrospective medical record review."[29] The authors issued a warning and "recommend pediatricians and dermatologists be aware of common products containing CAPB when counseling patients about their product choices."

**Young Children and Babies Are More Prone to React to Allergens**

40. Moreover, Defendant specifically labels the Products for young children and babies which experience allergic contact dermatitis at much higher rate. In fact, ACD is "common" in children and infants because their skin is thinner and more absorbent, and children have a higher surface area of skin to body weight ration.[30]

41. Children are also more likely to have underlying atopic dermatitis which facilitates sensitization due to an impaired skin barrier. Sensitization mainly occurs in newborns and infants aged 0–3 years, and the prevalence of subsequent allergic contact dermatitis increases with age.

**REASONABLE CONSUMERS ARE DECEIVED BY DEFENDANT'S FALSE LABELING STATEMENT**

42. There is a strong consumer demand for products that are "hypoallergenic" and free of common allergens. Research indicates that the sensitive skin market, including hypoallergenic products, is primed to grow dramatically by the end of this decade.[31]

---

[29] Collis, Reid W. et al., Cocamidopropyl betaine is commonly found in hypoallergenic personal care products for children, Journal of the American Academy of Dermatology, Volume 82, Issue 5, 1245 – 1247 (2020).

[30] Tang, GT, MD., Allergic contact dermatitis in children, DermNet (Sept. 2020), available at https://dermnetnz.org/topics/allergic-contact-dermatitis-in-children#.

[31] GRAND VIEW RESEARCH, *Sensitive Skin Care Products Market to Reach $80.97 Billion by 2030* (June, 2023), *available at* https://www.grandviewresearch.com/press-release/global-sensitive-skin-care-products-market (last visited August 14, 2024).

43. There is increasing demand for hypoallergenic baby care products as parents continue to become more health conscious and worried about adverse allergic reactions. [32]

44. The FDA's own guidance says that consumers "with hypersensitive skin, and even those with "normal" skin, may be led to believe that these products will be gentler to their skin than non-hypoallergenic" products.[33]

45. Consumers, like Plaintiffs, relied on Defendant's "hypoallergenic" labeling statements. The "hypoallergenic" statements on the labels of the Products are material to reasonable consumers. As referenced above, claims relating to hypoallergenic nature are important to consumers and reasonable consumers believe and expect that a hypoallergenic product does not contain skin allergens in an amount that is known to cause an allergic reaction in a significant number of people.

46. Plaintiffs and the putative class members suffered economic injury as a result of Defendant's actions. Plaintiffs and putative class members spent money that, absent Defendant's actions, they would not have spent. Plaintiffs and putative class members are entitled to damages and restitution for the purchase price of the Products that were falsely labeled and advertised. Consumers, including Plaintiffs, would not have purchased Defendant's Products, or would have paid less for the Products, if they had known the Products actually contain allergens.

---

[32] *Baby Care Market Projected to Flourish*, (October 17, 2023), *available at* https://www.beautypackaging.com/contents/view_breaking-news/2023-10-17/baby-care-market-projected-to-flourish/

[33] FDA. *"Hypoallergenic" Cosmetics* (February 25, 2022) available at https://www.fda.gov/cosmetics/cosmetics-labeling-claims/hypoallergenic-cosmetics.

## <u>CLASS ACTION ALLEGATIONS</u>

47. Plaintiffs brings this action as a class action pursuant to Cal. Code. Civ. Proc. § 382 on behalf of the following classes:

> All persons who purchased the Products for personal use in the United States within the applicable statute of limitations until the date class notice is disseminated. ("Nationwide Class")
>
> All persons who purchased the Products for personal use in California within the applicable statute of limitations until the date class notice is disseminated. ("California Subclass")
>
> All persons who purchased the Products for personal use in New York within the applicable statute of limitations until the date class notice is disseminated. ("New York Subclass")

48. Collectively, these classes are referred to as the "Class" unless otherwise indicated.

49. Excluded from the Class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; (iii) judicial officers and their immediate family members and associated court staff assigned to the case; (iv) individuals who received a full refund of the Products from Defendant.

50. Plaintiffs reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate subclasses, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

51. The Class is appropriate for certification because Plaintiffs can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

52. <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiffs believe that there are thousands of consumers

who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

53. Commonality: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a. Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

c. Whether Defendant made misrepresentations concerning the Products that were likely to deceive the public;

d. Whether Plaintiffs and the Class are entitled to injunctive relief;

e. Whether Plaintiffs and the Class are entitled to money damages and/or restitution under the same causes of action as the other Class Members.

54. Typicality: Plaintiffs are members of the Class that Plaintiffs seek to represent. Plaintiffs' claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Products. Plaintiffs are entitled to relief under the same causes of action as the other Class Members.

55. Adequacy: Plaintiffs are adequate Class representatives because Plaintiffs' interests do not conflict with the interests of the Class Members Plaintiffs seek to represent; the consumer fraud claims are common to all other members of the Class, and Plaintiffs have a strong interest in vindicating the rights of the class; Plaintiffs have retained counsel competent and experienced in complex class action litigation and Plaintiffs intend to vigorously prosecute this action. Plaintiffs have no interests which conflict with those of the Class. The Class

Members' interests will be fairly and adequately protected by Plaintiffs and proposed Class Counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiffs and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

56. The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action;

57. Additionally, or in the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

58. Plaintiffs seeks preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described, and to require Defendant to provide full restitution to Plaintiffs and the Class members.

59. Unless the Class is certified, Defendant will retain monies that were taken from Plaintiffs and Class members as a result of Defendant's wrongful conduct. Unless a classwide injunction is issued, Defendant will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

## FIRST CLAIM FOR RELIEF

**Violation of California's Consumers Legal Remedies Act ("CLRA")**

**Cal. Civ. Code §§ 1750, *et seq.***

60. Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

61. Plaintiffs bring this claim under the CLRA individually and on behalf of the California Subclass and Nationwide Class against Defendant.

62. At all times relevant hereto, Plaintiffs and the members of the Class were "consumer[s]," as defined in California Civil Code section 1761(d).

63. At all relevant times, Defendant was a "person," as defined in California Civil Code section 1761(c).

64. At all relevant times, the Products manufactured, marketed, advertised, and sold by Defendant constituted "goods," as defined in California Civil Code section 1761(a).

65. The purchases of the Products by Plaintiffs and the members of the Class were and are "transactions" within the meaning of California Civil Code section 1761(e).

66. Defendant disseminated, or caused to be disseminated, through its advertising, false and misleading representations, including the Products' labeling that the Products are "hypoallergenic." Defendant failed to disclose that the Products contain commonly known allergens. This is a material misrepresentation and omission as reasonable consumer would find the fact that the Products contain known allergens to be important to their decision in purchasing the Products. Defendant's representations violate the CLRA in the following ways:

a) Defendant represented that the Products have characteristics, ingredients, uses, and benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

b) Defendant represented that the Products are of a particular standard, quality, or grade, which they are not (Cal. Civ. Code § 1770(a)(7));

c) Defendant advertised the Products with an intent not to sell the Products as advertised (Cal. Civ. Code § 1770(a)(9)); and

d) Defendant represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Cal. Civ. Code § 1770(a)(16)).

67. Defendant's actions as described herein were done with conscious disregard of Plaintiffs' and the Class members' rights and were wanton and malicious.

68. Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA, since Defendant is still representing that the Products have characteristics which they do not have.

69. Pursuant to California Civil Code section 1782(d), Plaintiffs and the members of the Class seek an order enjoining Defendant from engaging in the methods, acts, and practices alleged herein.

70. Pursuant to California Civil Code section 1782, Plaintiff McGee notified Defendant in writing by certified mail of the alleged violations of the CLRA and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of their intent to so act. Defendant failed to rectify or agree to rectify the problems associated with the actions detailed herein (it did not respond at all) and give notice to all affected consumers within 30 days of the date of written notice pursuant to section 1782 of the CLRA. Thus, Plaintiffs seek damages, punitive damages, injunctive relief, and attorneys' fees and costs for Defendants' violations of the CLRA.

71. Pursuant to section 1780(d) of the CLRA, below is an affidavit showing that this action was commenced in a proper forum.

## SECOND CLAIM FOR RELIEF

**Violation of California's Unfair Competition Law ("UCL")**

**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

72. Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

73. Plaintiffs bring this claim under the UCL individually and on behalf of the California Subclass and Nationwide Class against Defendant.

74. The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising.

75. Defendant committed unlawful business acts or practices by making the representations and omitted material facts (which constitutes advertising

within the meaning of California Business & Professions Code section 17200), as set forth more fully herein, and by violating California's Consumers Legal Remedies Act, Cal. Civ. Code §§17500, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. § 17500, *et seq.*, 15 U.S.C. § 45, and by breaching express and implied warranties. Plaintiffs, individually and on behalf of the other Class members, reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

76. Defendant committed "unfair" business acts or practices by: (1) engaging in conduct where the utility of such conduct is outweighed by the harm to Plaintiffs and the members of the a Class; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and the members of the Class; and (3) engaging in conduct that undermines or violates the intent of the consumer protection laws alleged herein. There is no societal benefit from deceptive advertising. Plaintiffs and the other Class members paid for a Product that is not as advertised by Defendant. Further, Defendant failed to disclose a material fact (that the Product contain known allergens) of which they had exclusive knowledge. While Plaintiffs and the other Class members were harmed, Defendant was unjustly enriched by its false misrepresentations and material omissions. As a result, Defendant's conduct is "unfair," as it offended an established public policy. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

77. Defendant committed "fraudulent" business acts or practices by making the representations of material fact regarding the Products set forth herein. Defendant's business practices as alleged are "fraudulent" under the UCL because they are likely to deceive customers into believing the Products are actually hypoallergenic.

78. Plaintiffs and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions. This reliance has caused harm to Plaintiffs and the other members of the Class, each of whom purchased Defendant's Products. Plaintiffs and the other Class members have suffered injury in fact and lost money as a result of purchasing the Products and Defendant's unlawful, unfair, and fraudulent practices.

79. Defendant's wrongful business practices and violations of the UCL are ongoing.

80. Plaintiffs and the Class seek pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiffs and the Class seek interest in an amount according to proof.

81. Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate. Pursuant to California Business & Professions Code section 17203, Plaintiffs, individually and on behalf of the Class, seeks (1) restitution from Defendant of all money obtained from Plaintiffs and the other Class members as a result of unfair competition; (2) an injunction prohibiting Defendant from continuing such practices in the State of California that do not comply with California law; and (3) all other relief this Court deems appropriate, consistent with California Business & Professions Code section 17203.

## THIRD CLAIM FOR RELIEF

### Breach of Express Warranty

82. Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

83. Plaintiffs bring this claim for breach of express warranty individually and on behalf of the California Subclass and Nationwide Class against Defendant.

84. As the manufacturer, marketer, distributor, and seller of the Products, Defendant issued an express warranty by representing to consumers at the point of purchase that the Products are "hypoallergenic." This is an express warranty the Products are in fact hypoallergenic and does not contain known allergens.

85. Plaintiffs and the Class reasonably relied on Defendant's misrepresentations, descriptions and specifications regarding the Products, including the representation that the Products are "hypoallergenic."

86. Defendant's representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiffs and Members of the Class.

87. In fact, the Products do not conform to Defendant's representations because the Products contains known allergens. By falsely representing the Products in this way, Defendant breached express warranties.

88. Plaintiffs relied on Defendant's (the manufacturer) representations on the Products' labels and advertising materials which provide the basis for an express warranty under California law.

89. As a direct and proximate result of Defendant's breach, Plaintiffs and Members of the Class were injured because they: (1) paid money for the Products that was not what Defendant represented; (2) were deprived of the benefit of the bargain because the Products they purchased was different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendant's representations about the characteristics of the Products was truthful. Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiffs and Class Members would not have purchased the Products or would not have paid as much as they did for them.

## FOURTH CLAIM FOR RELIEF

**Violations of New York General Business Law § 349**

90. Plaintiff Ramsaran realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

91. Plaintiff Ramsaran brings this claim on behalf of the New York Class.

92. New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

93. In its sale of Products throughout the state of New York, at all relevant times herein, Defendant conducted business and trade within the meaning and intendment of New York's General Business Law § 349.

94. Plaintiff Ramsaran and the New York Class members are consumers who purchased the Products from Defendant for their personal use.

95. By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices by conspicuously representing on the packaging of the Products are "Hypoallergenic." Despite that representation, however, the Products contain known allergens.

96. The foregoing deceptive acts and practices were directed at consumers.

97. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nature and value of the Products.

98. As a result of Defendant's deceptive practices, Plaintiff Ramsaran and the New York Class members suffered an economic injury because they would not have purchased or would have paid less for the Products had they known the veracity of Defendant's misrepresentations.

99. On behalf of herself and the New York Class members, Plaintiff Ramsaran seeks to recover actual damages or fifty dollars per unlawful transaction

(i.e., for each sale of the Products), whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

### FIFTH CLAIM FOR RELIEF

### Violations of New York General Business Law § 350

100. Plaintiff Ramsaran realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

101. Plaintiff Ramsaran brings this count on behalf of the New York Class.

102. New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

103. Defendant violated New York General Business Law § 350 by representing on the packaging of the Products that they are "Hypoallergenic" Despite that representation, however, the Products contain known allergen ingredients.

104. The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

105. Defendant's misrepresentations have resulted in consumer injury or harm to the public interest.

106. As a result of Defendant's false advertising, Plaintiff Ramsaran and the New York Class members suffered an economic injury because they would not have purchased or would have paid less for the Products had they known the veracity of Defendant's misrepresentations.

107. On behalf of herself and the New York Class members, Plaintiff Ramsaran seeks to recover their actual damages or five hundred dollars per unlawful transaction (i.e., for each sale of the Products), whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

## REQUEST FOR RELIEF

Plaintiffs, individually, and on behalf of all others similarly situated, request for relief pursuant to each claim set forth in this complaint, as follows:

108. Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiffs as the Class Representatives and appointing the undersigned counsel as Class Counsel;

109. Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiffs and the Class members as a result of Defendant's unlawful, unfair, and fraudulent business practices;

110. Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

111. Ordering damages in amount which is different than that calculated for restitution for Plaintiffs and the Class;

112. Ordering statutory damages in the amount of $50 per transaction pursuant to New York General Business Law § 349 and statutory damages in the amount of $500 per transaction pursuant to New York General Business Law § 350;

113. Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiffs and the other members of the Class;

114. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

115. Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all claims in this Complaint so triable.

Dated: June 24, 2025

CROSNER LEGAL, P.C.

By: */s/ Craig W. Straub*
CRAIG W. STRAUB

Craig W. Straub (SBN 249032)
*craig@crosnerlegal.com*
Kurt D. Kessler (SBN 327334)
*kurt@crosnerlegal.com*
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

Attornevs for Plaintiffs

<u>Civil Code Section 1780(d) Affidavit</u>

I am an attorney duly licensed to practice before all of the courts of the State of California. I am one of the counsel of record for Plaintiff. This declaration is made pursuant to § 1780(d) of the California Consumers Legal Remedies Act. Defendant has done, and is doing, business in California, including in this county. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed June 24, 2025 at San Diego, California.

CROSNER LEGAL, P.C.

By: */s/ Craig W. Straub*
CRAIG W. STRAUB